---

### UNITED STATES DISTRICT COURT
### DISTRICT OF UTAH, CENTRAL DIVISION

---

| | |
|---|---|
| DEAN WARMINGTON, | |
| Plaintiff, | **ORDER** |
| vs. | |
| BUDDY KEETH, BOSSIER PARISH SHERIFF'S OFFICE, | Civil No. 2:07cv92 DAK |
| Defendant. | |

---

This matter is before the court on Defendants Buddy Keeth ("Mr. Keeth") and Bossier

Parish Sheriff's Office's Motion to Dismiss based on lack of personal jurisdiction, lack of venue,

and improper service of process.   The court held a hearing on the motion on July 8, 2008.  At the

hearing, Defendant was represented by R. Scott Young.   Plaintiff Dean Warmington ("Mr.

Warmington") was represented by Jerry D. Reynolds.   Before the hearing, the court carefully

considered the memoranda and other materials submitted by the parties.   Since taking the matter

under advisement, the court has further considered the law and facts relating to this motion.

Now being fully advised, the court enters the following Order.

### BACKGROUND[1]

According to Mr. Warmington's allegations, on or about February 25, 2005, he and

---

[1]  The following allegations are taken primarily from Mr. Warmington's Amended Complaint.
Although the parties have each submitted deposition testimony of Mr. Warmington, there has
been no conflicting evidence submitted from Mr. Keeth, except for affidavits from various
individuals to attempt to establish that Mr. Keeth was not involved in the arrest of Mr.
Warmington.  The court finds that this issue of whether the chain of causation was broken by the
involvement of other people is not ripe for decision at this point.  The court also relies on several
letters sent by Mr. Keeth to Mr. Warmington, which were attached as exhibits to his memoranda.

Mr. Keeth entered into a contract for the sale of a quarter-horse colt (the "colt") to be used as a stud horse.  Mr. Warmington agreed to buy the colt for $1,500, subject to a veterinarian inspection.  In negotiating for the colt, Mr. Warmington made numerous express statements that it was imperative that the colt was in a physical condition suitable for being used as a stud.  Mr. Keeth made numerous express reassurances that the colt met such criteria and that he would guarantee this condition.  Mr. Warmington sent Mr. Keeth a valid check for the payment of the colt in the amount of $1,500.00.  At about the same time, Mr. Keeth told Mr. Warmington that if he was interested, he also had a mare for sale for $1,200.00.  Mr. Warmington agreed to buy the mare, and Mr. Keeth agreed that the mare could be paid for in installments.

On March 11, 2005, Mr. Warmington arrived in Louisiana to pick up the colt and mare. He again stated the importance of the colt's being capable of being a stud.  Mr. Keeth reaffirmed that the colt met this criteria and that if it did not, he would "make things right between the parties."  Mr. Warmington alleges that the parties had agreed to have Mr. Keeth's veterinarian present to inspect the colt at the time of sale, but the veterinarian was not present when Mr. Warmington arrived.  The parties then agreed that Mr. Warmington could have his own veterinarian check the colt when it arrived in Utah.

When Mr. Warmington returned to Utah and had his veterinarian inspect the colt, the veterinarian determined that the colt had at least one undescended testicle and was not fit for use as a stud horse.  Mr. Warmington communicated this fact to Mr. Keeth and asked for a reduction in the price of the colt–or, alternatively, for permission to return the colt to Mr. Keeth.  Mr. Warmington offered to buy the colt for $300, which reflected the reduction in value due to the colt's condition.  He proposed that he would pay $300 for the colt and $1,200 for the mare,

2

which would be equal to the $1,500 that Mr. Warmington had already paid to Mr. Keeth.

According to Mr. Warmington, during many telephone conversations, Mr. Keeth reminded Mr. Warmington that Mr. Keeth was a Deputy Sheriff and was "well connected legally." Mr. Keeth sent at least two demands for payment to Mr. Warmington in Utah. In his letters, Mr. Keeth also noted that he had attempted to call Mr. Warmington on many occasions but that Mr. Warmington would not return his calls. Mr. Keeth stated that if Mr. Warmington did not pay the full amount by a certain date, Mr. Keeth would have "no choice but to file felony theft charges through my sheriff's office . . . ."

Ultimately, Mr. Keeth refused to adjust the price and refused to accept the return of the colt. Then, on July 25, 2005, Mr. Keeth, acting in his capacity as Deputy Sheriff in Bossier Parish, caused felony theft charges and an arrest warrant to be issued against Mr. Warmington for theft of livestock. On August 22, 2005, Mr. Warmington was arrested in Utah by the Utah County Sheriff's Office, pursuant to the Louisiana warrant. Mr. Warmington waived extradition, and on September 6, 2005, he was extradited to Louisiana. He was held at a maximum-security prison in Louisiana from September 6 to October 20, 2005. During that time, Mr. Warmington contends that he was abused by the guards and was denied medical treatment for his diabetes and high blood pressure. On October 18, he was arraigned, and the bond was initially set at $10,000, an amount far exceeding the value of the contractual dispute. On October 20, 2005, Mr. Warmington posted bond for a reduced amount of $1,200 and was released. On August 1, 2006, he sent a Notice of Claim to all Defendants. On September 21, 2006, the Louisiana District Attorney's office declared the criminal proceedings "nolle prose," indicating that the case would not be pursued.

3

**STANDARD OF REVIEW**

When the court's jurisdiction is contested, the plaintiff has the burden of proving that jurisdiction exists. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).   In the preliminary stages of litigation, however, the plaintiff's burden is light.   *Doe v. National Medical Servs.,* 974 F.2d 143, 145 (10th Cir.1992).  Where, as in the present case, there has been no evidentiary hearing, and the motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written material, the plaintiff need only make a prima facie showing that jurisdiction exists. *Id.; FDIC v. Oaklawn Apartments,* 959 F.2d 170, 174 (10th Cir.1992).  "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits." *Id.*  If the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor, and "the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Id.* However, only the well pled facts of plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true. *Ten Mile Indus. Park v. Western Plains Serv. Corp.,* 810 F.2d 1518, 1524 (10th Cir.1987); *Mitchell v. King,* 537 F.2d 385, 386 (10th Cir.1976).

**<u>DISCUSSION</u>**

**I.    MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

A. <u>Personal Jurisdiction Over Defendant Bossier Parish Sheriff's Office.</u>

Bossier Parish Sheriff's Office argues that the court does not have jurisdiction over the claims asserted against it because the office has no legal status and is not an entity capable of being sued.  Louisiana courts have made clear that "parish sheriff departments ha[ve] no legal status allowing [them]  to sue or be sued . . ." *Valentine v. Boneville Inurance Co.*, 691 So. 2d

4

665, 668 (La. 1997).   In addition, under 42 U.S.C. § 1983, a Sheriff's Office is not a person

capable of being sued under that statute.   Therefore, this court dismisses Mr. Warmington's

claims against Defendant Bossier Parish Sherriff's office for lack of jurisdiction.

    B.   <u>Personal Jurisdiction Over Defendant Buddy Keeth.</u>

       When a court's jurisdiction is contested, the plaintiff "bears the burden of establishing

personal jurisdiction over the defendant." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149

F.3d 1086, 1091 (10th Cir. 1998).   "To obtain personal jurisdiction over a non-resident defendant

. . . a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that

the exercise of jurisdiction does not offend the due process clause of the Fourteenth

Amendment." *Soma Medical Int'l v. Standard Chartered Bank,* 196 F.3d 1292, 1295 (10th Cir.

1999).   Because both parties agree that general personal jurisdiction does not exist in this case,

this court need only address whether, based on the facts presented, it would be appropriate to

exercise specific personal jurisdiction over Mr. Keeth.

       *1.   Specific Jurisdiction*

       In determining whether a federal court has personal jurisdiction over a defendant, a court

must determine "(1) whether the applicable statute potentially confers jurisdiction by authorizing

service of process on the defendant and (2) whether the exercise of jurisdiction comports with

due process." *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (quoting *Peay v.*

*BellSouth Med. Assistance Plan,* 205 F.3d 1206, 1209 (10th Cir. 2000) (quotations omitted)).

Because 42 U.S.C. § 1983 does not, by itself, confer nationwide service of process or jurisdiction

upon federal district courts to adjudicate claims, Rule 4(k)(1)(A) of the Federal Rules of Civil

Procedure refers us to the Utah long-arm statute,[2] which is coextensive with constitutional limitations imposed by the Due Process Clause.  *See SII MegaDiamond, Inc. v. American Superabrasives Corp.,* 969 P.2d 430, 433 (Utah 1998); *see also Far West Capital, Inc.,* 46 F.3d 1071, 1075 (10th Cir. 1995) (proceeding directly to constitutional analysis).

The exercise of jurisdiction over a nonresident defendant comports with due process "so long as there exist minimum contacts between the defendant and the forum State."  *Trujillo v. Williams,* 465 F.3d 1210, 1218 (10th Cir. 2006) (internal quotations omitted);  *see also Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.,* 205 F.3d 1244, 1247 (10th Cir.2000) (quoting *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291 (1980)).   The minimum contacts necessary for specific personal jurisdiction may be established where "the defendant has 'purposefully directed' its activities toward the forum jurisdiction and where the underlying action is based upon activities that arise out of or relate to the defendant's contacts with the forum."   *In re Application to Enforce Administrative Subpoenas Duces Tecum of S.E.C. v. Knowles,* 87 F.3d 413, 418 (10th Cir.1996) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985)).

---

[2]   In pertinent part, Utah's long-arm statute provides:

> Any person . . . who in person or through an agent does any of the following enumerated acts, submits himself . . . to the jurisdiction of the courts of this state as to any claim arising out of or related to:
> (1) the transaction of any business within the state;
> . . .
> (3) the causing of any injury within this state whether tortious or by breach of warranty.

Utah Code Ann. §78-27-24(1), (3) (2002 & Supp. 2003).

"The proper focus for analyzing these contacts is whether they represent an effort by the defendant to 'purposefully avail [themselves] of the privilege of conducting activities within the forum state.'" *Rambo v. American Southern Ins. Co.*, 839 F.2d 1415, 1418 (10th Cir. 1998). The "minimum contacts" necessary for specific personal jurisdiction are established "'if the defendant has "purposefully directed" his activities at residents of the forum and the litigation results from alleged injuries that "arise out of or relate to" those activities.'" *OMI Holdings, Inc.,* 149 F.3d 1086, 1091 (10th Cir. 1998) (quoting *Burger King Corp.,* 471 U.S. at 472) (other quotations omitted). If the defendant's activities create sufficient minimum contacts, the court then considers "whether the exercise of personal jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice.' " *Id.* (quoting *Asahi Metal Indus. Co. v. Superior Court of California,* 480 U.S. 102, 113(1987)).

In this case, Mr. Warmington argues federal due process standards have been met because Mr. Keeth caused a tortious injury within this state. Specifically, Mr. Warmington claims that Mr. Keeth caused a criminal complaint and warrant to be issued for Mr. Warmington's arrest which Mr. Keeth knew would likely result in Mr. Warmington's false arrest within his home state – Utah . Mr. Thus, Mr. Warmington contends, Mr. Keeth caused a tortuous injury in Utah to a Utah resident. Although Mr. Keeth argues that he had no involvement in Defendant's arrest, on a motion to dismiss before an evidentiary hearing "the well plead facts of the complaint must be accepted as true . . . and [must] be resolved in the plaintiff's favor when parties present conflicting affidavits." *Patriot Systems, Inc.*, 21 F. Supp. 2d 1318, 1320 (D. Utah 1998). Whether Mr. Keeth's actions directly caused the false arrest—

or whether the subsequent signing of an arrest warrant by the judge broke the causal chain—is an issue for another day.

Not only did Mr. Keeth arguably set in motion the eventual arrest of Mr. Warmington in Utah, but he likely knew that the arrest would occur in Utah, as he knew that Mr. Warmington resided in Utah.   In addition, he entered into a contractual relationship with a Utah resident, agreed to allow Mr. Warmington's veterinarian in Utah inspect the colt, made several telephone calls to Utah and sent at least two letter to Utah in which he attempted to collect his full payment.

The court agrees with Mr. Warmington that due process standards have been satisfied. Having found that the Defendant purposefully established minimum contacts within the forum state, the court must now determine whether the exercise of personal jurisdiction would offend "traditional notions of fair play and substantial justice."  In determining whether exercising jurisdiction over a non-resident defendant would offend these notions, the court must consider three important factors: (1) the burden on the defendant, (2) the forum state's interest in adjudicating the dispute, and (3) the plaintiff's interest in obtaining convenient and effective relief.  *See World-Wide Volkswagen Corp.*, 444 U.S. at 292.

While it may be difficult for Mr. Keeth to travel to Utah, this burden is outweighed by Utah's interest in adjudicating this case involving the allegedly false arrest of one of its citizens when Mr. Keeth arguably failed to honor his end of the deal.   The court also gives weight to Mr. Warmington's interest in obtaining convenient relief.

Thus, considering Mr. Warmington's allegations, his deposition testimony, and the lack of a material dispute about the critical allegations pertaining to the exercise of jurisdiction, the court concludes that exercising jurisdiction over Mr. Keeth would not offend "traditional notions

of fair play and substantial justice."

## II.    MOTION TO DISMISS FOR IMPROPER VENUE

In cases involving questions of federal law, proper venue must be found pursuant to 28

U.S.C. §1391(b), which in pertinent part states:

> A civil action wherein jurisdiction is not found solely on diversity
> of citizenship may, except as otherwise provided by law, be
> brought only in: (1) a judicial district where any of the defendants
> reside, if all defendants reside in the same state, [or] (2) a judicial
> district in which a substantial part of the events or omissions
> giving rise to the claim occurred, or a substantial part of the
> property that is the subject of the action is situated . . . .

Defendant argues that a substantial part of the events giving rise to Plaintiff's claim did

not occur within the state of Utah because the sale, inspection, and purchase all occurred within

Louisiana, as did the events which caused Mr. Warmington's Utah arrest, prosecution, and

imprisonment.  However, courts have made clear that a proper venue analysis under §1391(b)(2)

does not require a showing that the chosen venue has the *most* substantial connection to the

dispute, but instead focuses on "whether the forum activities played a substantial role in the

circumstances leading up to the plaintiff's claim." *Multi-Media, Intern., LLC. v. Promag Retail

Services*, 343 F. Supp. 2d 1024, 1033 (D. Kansas 2004) (citations omitted).  In this case, Mr.

Warmington's arrest, which occurred within Utah, certainly played a substantial role in the

circumstances leading up to his claim.  Arguably, "but for" Mr. Warmington's arrest, none of the

claims presently before this court would have arisen.   Thus, the court finds that venue is proper

in Utah.

## III.    MOTION TO DISMISS FOR IMPROPER SERVICE

Rule 4(a) of the Federal Rules of Civil Procedure requires that a summons be directed to

9

the defendant.   Additionally, Rule 4(e) specifies that an individual within a judicial district of the United States may be served by "(a) delivering a copy of the summons and complaint to the individual personally; (b) leaving a copy of each at the individuals dwelling or usual place of abode with someone of suitable age and discretion who resides therein; or (c) delivering a copy of each to an authorized agent authorized by appointment or by law to receive service of process."

Mr. Keeth argues that service in this case was improper because Mr. Warmington served Mr. Keeth's wife at *her* place of business. While this court agrees that service was improper, "when a court finds that service is insufficient but curable, it generally should quash the service and give the plaintiff an opportunity to re-serve the defendant." *Pell v. Azar Nut Co.*, 711 F.2d 949, 950 n.2 (10th Cir. 1983).   In the present case, Mr. Keeth raises no arguments that the improper service resulted in any prejudice or significant inconvenience to his defense of this claim, and therefore, in order to promote efficiency and avoid any excess litigation costs associated with a dismissal and re-filing, this court directs Mr. Warmington to properly serve Mr. Keeth.

<u>**CONCLUSION**</u>

For the foregoing reasons, IT IS HEREBY ORDERED that Defendants' Motion to Dismiss [docket # 41] is GRANTED IN PART AND DENIED IN PART.  All claims against Defendant Bossier Parish Sheriff's Office are DISMISSED with prejudice, and all other claims remain.  Mr. Warmington is directed to properly serve Mr. Keeth.

DATED this 28th day of August, 2008.

BY THE COURT:

_____
Honorable Dale A. Kimball
United States District Court Judge